## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JANET M. TRUITT, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :      C.A. No. 12-304-LPS |
| | : |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social Security, | : |
| | : |
| Defendant. | : |
| | : |

Katharine V. Jackson and Benjamin A. Smyth of DUANE MORRIS, LLP, Wilmington, DE.

    Attorneys for Plaintiff.

Charles M. Oberly, III, United States Attorney, and Patricia A. Stewart, Special Assistant United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, DE.

Nora Koch, Acting Chief Counsel, Region III, and Sandra Romagnole, Assistant Regional
Counsel, SOCIAL SECURITY ADMINISTRATION – REGION III OFFICE OF GENERAL
COUNSEL, Philadelphia, PA.

    Attorneys for Defendant.

## **MEMORANDUM OPINION**

December 7, 2012
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.   INTRODUCTION

Plaintiff Janet M. Truitt ("Truitt" or "Plaintiff") appeals from a decision of defendant,

Michael J. Astrue, the Commissioner of the Social Security Administration ("Commissioner" or

"Defendant"), denying her claim for supplemental security income ("SSI") under Title XVI of

the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42

U.S.C. § 405(g).

Presently pending before the Court are cross-motions for summary judgment filed by

Plaintiff and Defendant. (D.I. 11, 13) Plaintiff seeks reversal of Defendant's decision and an

award of SSI or, in the alternative, remand for another hearing. (D.I. 12 at 4) Defendant requests

that the Court affirm his decision. (D.I. 13) For the reasons set forth below, the Court will grant

Plaintiff's motion for summary judgment in part, deny Defendant's motion for summary

judgment, and remand the matter for proceedings consistent with this Opinion.

## II.   BACKGROUND

### A.   Procedural History

Plaintiff filed her claim for SSI on April 8, 2008, alleging disability since April 1, 2000,

due to problems with her knee, shoulder, and back as well as depression, seizures, and hepatitis.

(D.I. 9 (hereinafter "Tr.") at 72) On October 14, 2009, a hearing was held before an

administrative law judge ("ALJ"), at which Plaintiff was represented by a non-lawyer

spokesperson. (*Id.* at 451-92) Plaintiff and a vocational expert testified at the hearing. (*Id.* at

457-92) On December 22, 2009, the ALJ issued a written decision finding that Plaintiff was not

disabled as defined in the Social Security Act. (*Id.* at 18) On January 8, 2010, Plaintiff requested

1

review of the ALJ's decision. (*Id*. at 14) On January 13, 2012, the Appeals Council denied the request for review. (*Id*. at 5-7) Thus, the December 22, 2009 decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955, 404.981; *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On March 13, 2012, Plaintiff filed a complaint seeking judicial review of the ALJ's December 22, 2009 decision. (D.I. 1) Subsequently, on June 20, 2012, Plaintiff moved for summary judgment. (D.I. 11) In response, on July 11, 2012, the Commissioner filed a cross-motion for summary judgment. (D.I. 13)

## B.    Factual Background

### 1.    Plaintiff's Medical History, Treatment, and Condition

Plaintiff was forty-three years old on her alleged disability onset date and was considered a younger individual for disability determination purposes. (D.I. 12 at 2; *see also* 20 C.F.R. § 404.963(d)) She was fifty-two years old when the ALJ rendered the decision that is now the subject of review. (Tr. at 37) Plaintiff has at least a high-school education and is able to communicate in English. (*Id*. at 30) Plaintiff has not worked since 1978, when she was employed as a cashier. (*Id.* at 103) Plaintiff's relevant medical history is detailed below.

#### a.    Knee Pain

On April 26, 2007, Truitt complained to Edward F. Quinn, III, M.D., of bilateral knee pain, with the pain in her right knee being greater. (*Id*. at 167) Dr. Quinn assessed Truitt as having degenerative joint disease of the bilateral knees. (*Id.*) According to Dr. Quinn, Truitt had mild tenderness and minimal swelling. (*Id*. at 169)

On March 19, 2008, Truitt was seen for her knee pain by her family physician, Dr. Jona

Gorra, M.D. (*Id*. at 216) Truitt has been a patient of Dr. Gorra's since 2000. (*Id*. at 355) Dr. Gorra diagnosed Truitt as having bilateral knee pain. (*Id*.) No changes in her knees were noted in the records of her visits through January 24, 2009. (*Id*. at 204-06, 208, 211, 382-83, 385, 387, 390, 392-93, 395-96)

On February 4, 2009, x-rays revealed narrowing of both right and left medial tibiofemoral spaces, narrowing of the patellofemoral spaces, spurring of the tibias, femurs, and patellae, and increasing degenerative changes as compared to x-rays taken on November 29, 2006. (*Id*. at 317)

Truitt saw Dr. Gorra for follow-up visits on March 24 and April 7, 2009, during which time Dr. Gorra observed no changes in her condition. (*Id*. at 375, 377) Also on April 7, 2009, Dr. Gorra completed a "Multiple Impairment Questionnaire," in which the doctor identified tenderness as having been found in both of Truitt's knees. (*Id*. at 355-56)

#### b.   Back Pain

On June 2, 2006, Truitt complained about significant problems with her back. (*Id*. at 141) Truitt was then examined by Dr. Peter Coveleski, D.O. (*Id*.) Dr. Coveleski assessed Truitt as having chronic pain in her lower back and referred her to both a rheumatologist and a gastroenterologist. (*Id*.) Thereafter, Truitt saw Dr. Quinn on March 6, 2007, who diagnosed her with degenerative disc disease and degenerative joint disease of the lumbar spine. (*Id*. at 168) In February 2009, x-rays of the lumbrosacrosal spine showed partial sacralization of the fifth lumbar segment with degenerative changes in the facet joints of the lower lumbar spine and slight malalignment at the L4-5 representing less than Grade I spondyloisthesis. (*Id*. at 28)

#### c.   Shoulder Pain

Truitt was involved in a motor vehicle accident on June 1, 2005. (*Id*. at 143) On April

3

10, 2006, Truitt saw Dr. Coveleski to discuss her neck pain. (*Id.*) On April 16, 2007, Truitt complained of shoulder pain; she continued to have pain during follow-up visits on April 30, 2007 and June 14, 2007. (*Id.* at 217, 221-22) In a visit to Dr. Gorra on August 10, 2007, Truitt was found to have a loss of motion. (*Id.* at 413) She again complained of chronic back pain on September 7, 2007. (*Id.* at 411) Because of this pain, Dr. Gorra prescribed methadone. (*Id.*) Truitt next complained of shoulder pain to Dr. Gorra on March 19, 2008. (*Id.* at 216) On April 16, 2008, Truitt was diagnosed with shoulder and knee pain and prescribed the prescription drug Ativan. (*Id.* at 214)

### d.    Rheumatoid Arthritis

Following Truitt's visit with Dr. Coveleski on June 2, 2006, Truitt was examined by John I. Gomez, M.D., a rheumatologist. (*Id.* at 316) Dr. Gomez assessed that Truitt's pain complaints were most likely related to hepatitis C or early rheumatoid arthritis. (*Id.*) Additionally, Dr. Gomez stated that some of Truitt's trigger points may represent fibromyaglia. (*Id.*)

### e.    Seizures

On November 29, 2006, Truitt underwent a neurological examination by Dr. Paul C. Peet, P.A. (*Id.* at 165-66) Truitt reported that in August 2006 she had an episode of left facial twitching followed by a sensation as if her brain was speeding up. (*Id.* at 165) She denied any further episodes. (*Id.*) Dr. Peet made an initial assessment that Truitt suffered from a seizure disorder, anxiety disorder, hypertension, and chronic pain syndrome. (*Id.* at 166)

### f.    Non-treating physicians

The record contains various opinions and evaluations of Truitt from non-treating physicians, including State agency doctors. On October 5, 2007, Truitt visited Dr. Beshara

4

Helou, M.D., for a consultative examination. (*Id*. at 182-84) Dr. Helou suggested that Truitt "probably has underling [sic] joints and degenerative disc disease." (*Id*. at 184) Dr. Helou indicated that x-rays or MRIs would be helpful in further assessing Truitt. (*Id*.) On February 11, 2009, Truitt visited Dr. Helou for an internal medicine consultation. (*Id*. at 338-41) Dr. Helou reassessed Truitt with "moderate-to-severe knee pain" that was consistent with degenerative joint disease. (*Id*. at 339) Dr. Helou also noted that Truitt suffered from "chronic musculoskeletal low back pain with underlying degenerative joint disease." (*Id*.)

On August 28, 2008, Dr. V.K. Kataria, M.D., completed a Physical Residual Functional Capacity Assessment of Truitt. (*Id*. at 308-12) Dr. Kataria opined that Truitt could perform work with a light level of exertion. (*Id*.)

On February 28, 2009, Dr. Anne C. Aldridge reviewed Truitt's entire file. (*Id*. at 353) Dr. Aldridge affirmed the opinion of Dr. Kataria and additionally opined that Truitt lacked substantial credibility. (*Id*.)

On February 12, 2009, Truitt saw Michael Moss, Ph. D, an SSA Consultative Psychologist. (*Id*. at 332-35) Moss found Truitt's facial expression to be "significant for being sad, anxious, and worried." (*Id*. at 332) Truitt stated that she felt "like she didn't fit in," could not lift things, and had low mobility. (*Id*.) Moss observed no anxiety or depression but noted Truitt's mood was depressed and expansive. (*Id*. at 334) Dr. Moss assessed Truitt as having good judgment but poor insight. (*Id*.) Overall, Dr. Moss gave Truitt a prognosis of "good." (*Id*. at 335)

## 2. The Administrative Hearing

Plaintiff's administrative hearing took place on October 14, 2009. (*Id*. at 451) Plaintiff

5

testified and was represented by a non-attorney spokesperson. (*Id*. at 453). A vocational expert also testified. (*Id*. at 488-92)

### a. Plaintiff's Testimony

Plaintiff testified that she is fifty-two years old, five-feet three inches tall, and weighs 175 pounds. (*Id*. at 457-58) She stated that she did not have a driver's license due to suffering from seizures in 2006. (*Id*. at 458) She and her husband had been supported by his disability payments and financial help from her parents and brother-in-law. (*Id*. at 460) Truitt had not worked recently and had no plans to work in the future. (*Id*.) She spends about one day each week watching her daughter's children. (*Id*. at 460-61)

Truitt further testified that the most problematic physical ailment she suffers from is the pain in her knees. (*Id*. at 461) Her right knee was damaged in a car accident when she was 19. (*Id*. at 462) Plaintiff stated that she had been receiving pain treatment from Dr. Gorra, her primary care physician. (*Id*.) She also testified that she saw an orthopedic specialist, Dr. Quinn, who gave her shots in both knees and recommended that both knees eventually be replaced. (*Id*. at 463) Plaintiff takes methadone four times per day to treat her knee pain. (*Id*.) Her knee pain wakes her up once each night at around 4:00 a.m. (*Id*. at 473)

Plaintiff explained that she also experiences pain in her back stemming from a car accident that occurred in 2005. (*Id*. at 464-65) The methadone she takes is also for her back pain. (*Id*. at 465) Additionally, Plaintiff takes prescribed medication for her high blood pressure and diabetes. (*Id*. at 466-67) Plaintiff also stated that she suffers from shoulder pain when putting on clothes or moving in certain ways. (*Id*. at 470-71) Her doctor suggested she may have fibromyalgia but she has never been diagnosed with this condition. (*Id*. at 471)

6

Plaintiff testified that she could only walk for less than one hour in an eight-hour work day. (*Id.* at 475) She can only stand for 10 to 12 minutes at a time and sit for 30 minutes at a time before her knees lock up. (*Id.* at 476) She can only lift five pounds and has been advised by Dr. Gorra that she should not lift anything over 10 pounds. (*Id.*) Around the house she dusts, does the dishes, and folds the laundry. (*Id.* at 477) She also takes care of the family's finances. (*Id.* at 478)

With regard to her mental health, Plaintiff testified that she currently takes Klonopin and has been on different medications for the past 10 years. (*Id.* at 472) She admitted to feeling depressed on occasion due to her inability to help with her family. (*Id.*) This depression has not led to anxiety or panic attacks or problems dealing with others. (*Id.* at 472-74)

### b.      Vocational Expert's Testimony

A vocational expert also testified at the hearing. (*Id.* at 488) There was no relevant work experience for the expert to classify.

The ALJ put the following hypothetical to the vocational expert:

> This is a person who is 50, 51 years of age at the application date, has a 12th grade education, is able to read, write, and do at least simple math. There is no work history. There are certain underlying impairments that place limitation[s] on the ability to do work related activities. We'll start at a light level of exertion. Posturals are all occasional, but no climbing of a ladder, a rope, or a scaffold. This person should avoid working overhead in general and this person would require simple, unskilled work because there is no work history, perhaps, also including medication side effects, and or depression. Now would there be any simple, unskilled work such a person could do in the regional or national economy that would fit within the parameters of the hypothetical? And if a person can do light level of exertion, they can also do sedentary. So if you can, several examples at light, several at sedentary. But only if you can.

7

(*Id.* at 488-89) In response, the vocational expert provided a short list of jobs, including a pre-assembler or taper for printed circuit boards, mail clerk, and food and beverage clerk. (*Id.*)

The vocational expert further testified that if – as Dr. Gorra indicated in the multi-impairment questionnaire is true of Truitt – in an eight-hour day someone could sit only up to one hour and stand or walk only up to one hour – there would be no jobs suitable for the person. (*Id.* at 491) Likewise, if – as Dr. Gorra also indicated was the case for Truitt – a person would be absent from work more than three times each month on average, "at that point there would be a loss of productivity and no work on a full-time sustained basis." (*Id.*)

### 3. The ALJ's Findings

On December 22, 2009, the ALJ issued the following findings:

1. The claimant has not engaged in substantial gainful activity since April 8, 2008, the application date (20 C.F.R. 416.971 *et seq*).

2. The claimant has the following severe impairments: degenerative joint disease of the knees; degenerative disc disease of the lumbar spine; fibromyalgia; obesity and depression (20 C.F.R. 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in the 20 C.F.R. 416.927(b) except that she could never climb a ladder, rope or scaffold; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; would need to avoid working overhead in general; and would need simple, unskilled work due to depression, lack of past work and possible medication side effects.

8

5.    The claimant has no past relevant work (20 C.F.R. 416.965).

6.    The claimant was born May 9, 1957 and was 50 years old, which is
      defined as an individual closely approaching advanced age, on the
      date of application was filed (20 C.F.R. 416.963).

7.    The claimant has at least a high school education and is able to
      communicate in English (20 C.F.R. 416.964).

8.    Transferability of job skills is not an issue because the claimant
      does not have past relevant work (20 C.F.R. 416.968).

9.    Considering the claimant's age, education, work experience, and
      residual functional capacity, there are jobs that exist in significant
      numbers in the national economy that the claimant can perform (20
      C.F.R. 416.969 and 416.969(a)).

10.   The claimant has not been under disability, as defined in the Social
      Security Act, since April 8, 2008, the date the application was filed
      (20 C.F.R. 416.920).

(Tr. at 20-31)

## III.    LEGAL STANDARDS

### A.    Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). In determining the appropriateness of summary judgment, the Court must "review

the record taken as a whole . . . draw[ing] all reasonable inferences in favor of the nonmoving

party, and it may not make credibility determinations or weigh the evidence." *Reeves v.*

*Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000) (internal quotation marks omitted).

If the Court is able to determine that there is no genuine dispute as to any material fact and that

the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill*

9

*v. City of Scranton*, 411 F.3d 118,125 (3d Cir. 2005).

## B.   Review of the ALJ's Findings

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190-91. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by

10

countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (*e.g.*, that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1983). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 239 F. 3d at 1190-91.

## IV.    DISCUSSION

### A.    Disability Determination Process

Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program. *See* 42 U.S.C. § 1382(a). A "disability" is defined for purposes of SSI as the inability "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(1)(B); *see also Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003). In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 416.920;

11

*Russo v. Astrue*, 421 Fed. App'x. 184, 188 (3d Cir. Apr. 6, 2011). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. § 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(i) (mandating finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 416.920(a)(4)(ii) (mandating finding of non-disability when claimant's impairments are not severe). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 416.920(a)(4)(iii). When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R.§ 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. § 416.920(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv) (stating claimant is not disabled if able to return to past relevant work). A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to her past relevant work."

*Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999) (internal citation omitted).

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. § 416.920(a)(4)(v) (mandating finding of non-disability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *Id.* at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [her] medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

### B.      Truitt's Argument on Appeal

Truitt presents three arguments in her appeal: (1) the ALJ failed to follow the treating physician rule; (2) the ALJ failed to evaluate Truitt's credibility properly; and (3) the ALJ relied on flawed vocational expert testimony. The Court considers each of these arguments in turn.

### 1.      Treating physician rule

Truitt argues that the ALJ failed to give controlling weight to her treating physician, Dr. Gorra, in violation of the treating physician rule. (D.I. 12 at 7) Relatedly, Truitt contends that the ALJ failed to accord proper weight to Truitt's longstanding relationship with Dr. Gorra, as required pursuant to 20 C.F.R. §§ 416.927(d)(2)-(6). (D.I. 12 at 11) Defendant responds that an ALJ is not bound to accept the opinion of one medical expert and may draw its own inferences.

13

(D.I. 14 at 11) Here, Defendant continues, the ALJ's discounting of Dr. Gorra's opinion was supported by substantial evidence, so the Court has no basis to disturb the ALJ's decision to give controlling weight to the opinions of Dr. Helou and the State agency doctors. (D.I. 14 at 13)

The Third Circuit subscribes to the "treating physician doctrine." *See Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). Consistent with this rule, a treating physician's opinion is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and it is not inconsistent with the other substantial evidence in the record." *Fargnoli*, 247 F.3d at 43. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (internal citation omitted)

When there is medical evidence contradicting the treating physician's view, and an ALJ decides to give controlling weight to the views of another physician, the ALJ must carefully evaluate how much weight to accord the treating physician. *See Gonzalez*, 537 F. Supp. 2d at 660. A decision not to give the treating physician controlling weight does not automatically result in giving no weight whatsoever to that opinion. *See id.* In evaluating medical opinions, an ALJ must weigh all the evidence and resolve all material conflicts. *See Barnhill v. Astrue*, 794 F. Supp. 2d 503, 515 (D. Del. 2011). Additionally, it is not for this Court to reweigh the various medical opinions in the record. *See Gonzalez*, 537 F. Supp. 2d at 659.

If a treating physician's opinion is not given controlling weight, the ALJ should consider numerous factors in determining the weight to give it, including: length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability of the

14

opinion afforded by the medical evidence, consistency of the opinion with the record as a whole, and specialization of the treating physician. *See* 20 C.F.R. §§ 416.1527(c)(2)-(6). Further, when an ALJ's decision is to deny benefits, the notice of the determination must:

> contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave the treating source's medical opinion and the reasons for that weight.

S.S.R. 96-2p, 1996 WL 374188, at 5.

Here, the ALJ gave controlling weight to the opinions of non-treating physicians Kataria and Aldridge. Neither Dr. Kataria nor Dr. Aldridge examined Truitt. Non-treating physician Dr. Helou examined Truitt but did not express an opinion on Truitt's functional capacity.

The ALJ stated: "Dr. Helou did not provide specific limitations for the claimant in terms of her ability to work, but indicated in October 2007 that the claimant's findings on evaluation were not as significant as her complaints of pain." (Tr. at 28) An ALJ is not permitted to draw a negative inference regarding a claimant's RFC through a doctor's silence. *See Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (stating "doctor's silence on claimant's work capacity does not constitute substantial evidence supporting ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter"). Dr. Helou was not asked to – nor did he – fill out a Multiple Impairment Questionnaire or give an assessment of Truitt's RFC. Dr. Helou merely examined Truitt and indicated that she had moderate degenerative knee disease, an assessment consistent with that of Dr. Gorra. (Tr. at 28)

The only medical opinions as to Truitt's RFC on which the ALJ relied were those of State

15

agency physicians Kataria and Aldridge. On August 28, 2008, Dr. Kataria reviewed Truitt's medical records and opined that she could perform light work. (Tr. at 308-12) In a subsequent assessment, Dr. Aldridge affirmed Dr. Kataria's opinion. (Tr. at 353) Neither Dr. Kataria nor Dr. Aldridge examined Truitt. On the record here, it was improper to credit the opinions of these non-examining consulting physicians that contradict the opinion of a longtime treating physician. *See Dorf v. Bowen*, 794 F.2d 896, 901 (3rd Cir. 1986).

In addition, the opinions of non-treating physicians must be examined for whether, and how well, these opinions take into account other evidence in the record, including the view of treating physicians. "[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources." *See* 20 C.F.R. § 416.927(c)(3).

The degree of explanation provided by the State agency doctors here is comparable to that provided by Dr. Gorra. The ALJ discounted Dr. Gorra's opinion as weak evidence, in part, because it was written in a "fill in the blanks" or "check box" form. However, Drs. Kataria and Aldridge conveyed their opinions on similar forms, yet received no similar criticism from the ALJ. (Tr. at 307-12, 353) Indeed, the ALJ "afforded great weight" to the opinions of Drs. Kataria and Dr. Aldridge without identifying supporting explanations regarding these physicians. (*Id.* at 29) By contrast, Dr. Gorra provided nearly 100 pages of medical records, accumulated over the course of his lengthy relationship with Truitt. (*Id.* at 200-95)

It is true that Drs. Kataria and Aldridge relied, in part, on Dr. Helou's evaluation of Truitt

16

– and Dr. Helou's evaluation was based on his examination of Truitt. Under the circumstances, however, this does not alter the Court's conclusions. Dr. Helou (like Drs. Aldridge and Kataria) is not a treating physician and lacks the lengthy relationship Dr. Gorra had with Truitt. Dr. Gorra's opinion is supported, on the other hand, by appropriate clinical and diagnostic tests (*see, e.g.*, Tr. at 230-40) and is consistent with the record as a whole. Moreover, Dr. Helou's observations were in many respects consistent with those of Dr. Gorra's, including observation of a limping and slow gait, difficulties getting on and off the examining table, weakness in the upper and lower extremities, and a painful range of motion. (*See* Tr. at 339-40) That the State agency doctors relied on Dr. Helou's two in-person evaluations does not – in light of the overall medical record as well as the lack of explanation by Drs. Aldridge or Kataria or the ALJ – render the ALJ's decision one supported by substantial evidence.

Accordingly, the Court has concluded that it must remand this matter to Defendant to allow for additional proceedings consistent with the treating physician rule.

### 2.    Truitt's credibility

Truitt argues that the ALJ failed to evaluate her credibility properly. (D.I. 12 at 12) An ALJ must follow a two-step process in evaluating a claimant's credibility. First, the ALJ must "consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p, 1996 WL 374186 (July 2, 1996). Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." (*Id.*) At this second prong, an ALJ considers: (1) the individual's daily activities; (2) the location, duration,

17

frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. (*See id.*)

Regulations instruct the ALJ to evaluate the consistency of a claimant's statements with the evidence of record. *See* 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you.").

Here, while the ALJ properly considered the factors identified above, since this matter is being remanded it may be appropriate for the Commissioner to reassess Truitt's credibility in accordance with the standards set out in 20 C.F.R. § 416.929(c)(4).

### 3. The hypothetical given to the vocational expert

Truitt contends that the hypothetical given to the vocational expert was flawed in that it did not accurately reflect Truitt's RFC. (D.I. 12 at 15) An ALJ's question to a vocational expert may only be used to determine a claimant's disability if "the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210 at

18

218 (3d Cir. 1984); *see also Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004) ("If . . . an ALJ poses a hypothetical question to a VE that fails to reflect 'all of the claimant's impairments that are supported by the record . . . [the VE's testimony] cannot be considered substantial evidence.") (internal quotation marks omitted). On remand, the Commissioner may reach a different conclusion as to Truitt's impairments and RFC, and he may choose to use another vocational expert. Accordingly, it is not necessary at present for the Court to determine whether the hypothetical provided to the expert at the administrative hearing was or was not accurate.

## V.     CONCLUSION

For the reasons given above, the Court will grant in part and deny in part Plaintiff's motion for summary judgment. The Court will also deny Defendant's motion for summary judgment. This matter will be remanded to the Commissioner for proceedings not inconsistent with this Opinion.

19